UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| GMS Management, Inc., | ) | CASE NO.  1:14 CV 424 |
| | ) | |
| Plaintiff, | ) | JUDGE PATRICIA A. GAUGHAN |
| | ) | |
| Vs. | ) | |
| | ) | |
| Evanston Insurance Company, | ) | Memorandum of Opinion and Order |
| | ) | |
| Defendant. | ) | |

### Introduction

This matter is before the Court upon plaintiff's Motion for Partial Summary Judgment

(Doc. 17), defendant's Motion for Summary Judgment (Doc. 33), and plaintiff's Motion to Strike

¶ 7 of the Declaration of Emily Shaw (Doc. 54). This case arises out of the denial of insurance

coverage by defendant.  For the following reasons, plaintiff's motion is DENIED, defendant's

motion is GRANTED, and the Motion to Strike is MOOT.

### Facts

Plaintiff GMS Management, Inc. filed this Complaint against defendant Evanston

Insurance Company in the Cuyahoga County Common Pleas Court. The case was removed on

1

the basis of diversity of citizenship.

The underlying facts are not in dispute.  Plaintiff is a residential landlord. Defendant is an insurance company.  Defendant insures plaintiff under a written insurance policy entitled Tenant Discrimination Liability Insurance Policy (hereafter, the policy).  (Doc. 34 Ex. 1) On June 13, 2013, Thomas Fasanaro submitted a rental application for an apartment at Deer Creek Apartments, an apartment complex managed by plaintiff. In response to an inquiry regarding his employment, Fasanaro indicated on the application, "disabled." By written notification, dated June 24, 2013, plaintiff advised Fasanaro that his application had been denied based on the fact that his income did not meet the criteria and that a credit report had revealed delinquent past or present credit obligations with others. Fasanaro filed an Ohio Housing Discrimination Charge with the Ohio Civil Rights Commission (OCRC) dated August 8, 2013 and received by the OCRC on August 12, 2013. Fasanaro asserted in the charge that plaintiff had refused to rent to him because of his handicap. (Doc. 34 Exs.)

An "official notification" was issued by the OCRC, dated August 13, 2013, and advised plaintiff that it had "been named as a Respondent" in the case *Thomas Fasanaro v. Deer Creek Run Apartments,* AKR H3 (37051) 08122013. The OCRC notification states, "The housing discrimination charge was officially filed with the Department of Housing and Urban Development and the [OCRC], pursuant to the Fair Housing Act and Section 4112 of the Ohio Revised Code."  It further states, "There are two options for processing the above referenced charge.  You may elect either *Option A- Alternative Dispute Resolution,* or *Option B-Investigation*."  The notification explained both options.  In part, the notification states that "ADR is a mediation program implemented by the OCRC aimed at helping parties resolve their

disputes without a full investigation by the OCRC or costly and time-consuming litigation."

After explaining the mediation process, the notification states, "Should an agreement not be

reached the case will be forwarded for a full investigation." (Doc. 34 Ex. 6)  Plaintiff received

the notification on August 16, 2013. (Doc. 17 at 1, 3)

Plaintiff did not notify defendant of the OCRC charge at that point. Plaintiff elected to

participate in alternative dispute resolution and it retained attorney James Ogden who

represented plaintiff during an unsuccessful mediation of the OCRC charge. (James Ogden

depo.) The matter then proceeded to investigation. By notification dated November 19, 2013, the

OCRC advised plaintiff that "the investigation of the above-referenced matter has not been

completed within 100 days from the filing of the charge."  (Doc. 34 Ex. 8) The OCRC further

advised, "At this time, the projected date for completion of the investigation of this case will be

June 28, 2014.  This date, however, is subject to change because we cannot always predict what

additional information or further action may be necessary to ensure that a comprehensive and

impartial investigation has been conducted." (*Id.*)

By letter to  Lyons Insurance Group (the insurance agency) of December 3, 2013,

plaintiff wrote "to formally submit a claim" pursuant to the policy.  The letter references the

OCRC charge and states that GMS was named as a respondent by complainant Fasanaro on

August 13, 2013. The letter further states,

> The respondents elected an alternative dispute resolution and a telephone hearing was
> conducted on September 9, 2013.  The respondents were represented by Attorney James
> Ogden. Respondents never received a formal notice from the OCRC's mediator theat
> [sic] the mediation had failed.
>
> The respondents received no further notice regarding this matter until Attorney Ogden
> received a telephone message on November 20, 2013...

Additionally, the letter states that plaintiff received a subpoena from the OCRC on December 2,

2013 for documents and a deposition. The letter concludes, "Please advise me immediately who

will be representing the respondents in this matter and what steps are being taken to quash or

limit the subpoena." (Doc. 34 Ex. 11)

By letter of December 17, 2013, defendant, through Claims Examiner Emily Shaw,

denied coverage of the claim and stated it would not defend or indemnify plaintiff.  The letter

states, in part, that

> a condition precedent to coverage under the Policy is that the Insured comply with
> Section VII, para. 1. entitled Notice of Claim.  It appears that the Complaint was received
> by the Insured on August 15, 2013.  Accordingly, the Institution of the Claim occurred on
> August 15, 2013. We draw your attention to the specific language of Section VII Claims,
> para. 1. (the Policy's Notice provision), which states that:
>
>> Each Insured shall use all reasonable means to assure that each Claim is promptly
>> reported to the Company AND IN NO EVENT LATER THAN SIXTY (60)
>> DAYS FROM THE DATE OF THE INSTITUTION OF ANY LEGAL OR
>> ADMINISTRATIVE PROCEEDING.  REPORTING THE CLAIM WITHIN
>> THE SIXTY (60) DAYS FROM THE INSTITUTION OF ANY LEGAL OR
>> ADMINISTRATIVE PROCEEDING IS A CONDITION PRECEDENT TO
>> COVERAGE UNDER THIS POLICY.
>
> The Claim was first reported to the Company on December 3, 2013, more than 60 days
> after August 15, 2013- the Institution of the Claim. Because the Claim was not reported
> to the Company within sixty (60) days of Institution of the Claim, a condition precedent
> to coverage is not satisfied, and coverage is denied.

(Doc. 34 Ex. 13) Ms. Shaw also submits her declaration wherein she reiterates that she denied

"the  claim for late notice." (Shaw decl.)[1]

---

[1]     Plaintiff moves to strike paragraph 7 of Shaw's declaration wherein she avers that
the denial of coverage was reasonably justified and that she (and others acting on
defendant's behalf) did not act in bad faith. As discussed below, the Court
concludes that the denial of coverage was proper and, thus, there was no bad
faith.  Therefore, the Motion to Strike is moot.

By letter of December 20, 2013, plaintiff, through its present attorney, contested the denial of coverage based upon late notice of the claim.  The letter states that the notice was timely because the policy requires that notice of the claim be given within 60 days of "institution of any legal or administrative proceeding" and there had been no "proceeding" because that word does not encompass an "investigation"and the matter had not gone past an "investigation." (Doc. 34 Ex. 14)

According to Ms. Shaw, after "several communications with [plaintiff's attorney] and careful consideration of his arguments, we determined that our initial evaluation of the Policy was correct and that coverage was unavailable due to untimely notice."  (Shaw decl.)  Plaintiff thereafter filed this Complaint setting forth two claims. Count One alleges that plaintiff is entitled to coverage under the policy and, therefore, defendant is obligated to provide a defense and indemnify with respect to the Fasanaro charge. Count Two alleges that defendant failed to exercise good faith in processing the claim and seeks punitive damages. Plaintiff also seeks attorney's fees in connection with defending the Fasanaro charge and "incurred in the vindication of coverage under the Policy."[2]

---

2    The Complaint herein was filed on January 23, 2014. Plaintiff, through its current counsel, also filed a lawsuit against the OCRC on January 16, 2014 in the Cuyahoga County Common Pleas Court. *GMS Management Co.v. OCRC*, CV-14-820282.  Plaintiff alleged that the OCRC violated Ohio statutory law and constitutional due process in connection with its conduct in investigating and handling charges. The complaint sought, *inter alia,* a declaration that the Fasanaro charge failed to contain a "concise statement of facts" and "an allegation of an unlawful discriminatory practice" such that it violated GMS's statutory and constitutional rights. The matter eventually proceeded to a bench trial in August 2015 before Judge Richard McMonagle. Judgment was entered in defendant's favor in December 2015. Plaintiff appealed. C.P.docket.cp.cuyahogacounty.us; Doc. 47 Ex. A.

This matter is now before the Court upon cross motions for summary judgment.[3]

**Standard of Review**

Summary Judgment is appropriate when no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986) (citing Fed. R. Civ. P. 56(c)); *see also LaPointe v. UAW, Local 600*, 8 F.3d 376, 378 (6th Cir. 1993).  The burden of showing the absence of any such genuine issues of material facts rests with the moving party:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits," if any, which it believes demonstrates the absence of a genuine issue of material fact.

*Celotex*, 477 U.S. at 323 (citing Fed. R. Civ. P. 56(c)).  A fact is "material only if its resolution will affect the outcome of the lawsuit."  *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).  Accordingly, the nonmoving party must present "significant probative evidence" to demonstrate that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos., Inc*., 8 F.3d 335, 340 (6th Cir.1993).  The nonmoving party may not simply rely on its pleading, but must "produce evidence that results in a conflict of material fact to be solved by a jury." *Cox v. Kentucky Dep't. of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995).

The evidence, all facts, and any inferences that may permissibly be drawn from the facts

---

[3]     Plaintiff moves for partial summary judgment to the effect that defendant's denial of coverage was improper; the denial was in bad faith; and irrespective of any finding of bad faith, defendant is liable for plaintiff's attorney's fees incurred in defending itself against the OCRC charge and its attorney's fees incurred herein to vindicate its right to coverage.  Defendant moves for summary judgment on the claims asserted against it in the Complaint.

must be viewed in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Eastman Kodak Co. v. Image Technical Servs., Inc.*, 504 U.S. 451, 456 (1992). However, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.

Summary judgment should be granted if a party who bears the burden of proof at trial does not establish an essential element of his case. *Tolton v. American Biodyne, Inc.*, 48 F.3d 937, 941 (6th Cir. 1995) (citing *Celotex*, 477 U.S. at 322). Moreover, if the evidence is "merely colorable" and not "significantly probative," the court may decide the legal issue and grant summary judgment. *Anderson*, 477 U.S. at 249-50 (citation omitted).

**Discussion**

**I. Count One (Denial of Coverage)**

The parties dispute whether the claim was properly denied as untimely pursuant to the policy.

"The question of whether the language of an agreement is ambiguous is a question of law." *United States v. Donovan*, 348 F.3d 509, 512 (6th Cir. 2003) (*citing Parrett v. Am. Ship Bldg. Co.*, 990 F.2d 854, 858 (6th Cir. 1993)). Where the terms of a contract are clear and unambiguous, the Court presumes that the parties' intent resides in the words utilized in the agreement. *Gencorp, Inc. v. American Int'l Underwriters*, 178 F.3d 804, 817-18 (6th Cir. 1999). "[I]f the meaning of the contract is apparent, the terms of the agreement are to be applied, not interpreted." *Id.* "Only when the language of a contract is unclear or ambiguous, or when the circumstances surrounding the agreement invest the language of the contract with a special

7

meaning will extrinsic evidence be considered to give effect to the parties' intentions."  *Shifrin v.*

*Forest City Enterprises, Inc.*, 597 N.E.2d 499, 501 (Ohio 1992).  Under Ohio law, common

words appearing in the contract "will be given their ordinary meaning unless manifest absurdity

results, or unless some other meaning is clearly evidenced from the face or overall contents of

the instrument."  *Id.*  (internal quotation and citation omitted). "A contract of insurance prepared

and phrased by the insurer is to be construed liberally in favor of the insured and strictly against

the insurer, where the meaning of the language used is doubtful, uncertain or ambiguous."  *Curry*

*v. Estate of Akers*, 47 N.E.3d 214 (Ohio 10th App.Dist. 2016) (citing *Toms v. Hartford Fire Ins.*

*Co.*, 146 Ohio St. 39 (1945)).  *See also  Wayne Mut. Ins. Co. v. McNabb*, 45 N.E.3d 1081 (Ohio

4th App.Dist. 2016)(citations omitted)("If provisions in an insurance contract are ambiguous, i.e.,

reasonably susceptible of more than one interpretation, they will be construed liberally in favor

of the insured.") Where a term is undefined, the court looks to the plain and ordinary meaning of

the word. *Mastellone v. Lightning Rod Mut. Ins. Co.*175 Ohio App. 3d 23 (2008) (citing

*Nationwide Mut. Fire Ins. Co. v. Guman Bros. Farm,* 73 Ohio St.3d 107 (1995)) ("When terms

are undefined, we generally give them their plain and ordinary meaning.") "The mere absence of

a definition in an insurance contract does not make the meaning of the term ambiguous." *Belich*

*v. Westfield Ins. Co.*, 2001 WL 20751 (Ohio App. 11th Dist. Dec. 29, 2000).

At issue is the following language found in the policy:

**III. DEFINITIONS**

\*\*\*

2.     **"Authority"** means the United States Department of Housing and Urban
Development or any similar federal, state or local agency charged with the
administration of fair housing laws.

\*\*\*

4.  **"Claim"** shall mean a written demand for money or services by a Tenant as a result of Wrongful Discrimination by the Insured, including the Institution in a court of general jurisdiction of any lawsuit against the Insured by a Tenant alleging discrimination against the Tenant on the basis of race, religion, age, sex, sexual preference, national origin, familial status or disability.  Claim shall also include the Institution of a charge against the Insured with any Authority by a Tenant or an administrative action initiated by an Authority including any investigations, conciliation meetings or hearings on behalf of a Tenant.

\*\*\*

9.  **"Institution"** means, when referring to the commencement of any lawsuit, the time legal process is served on the Insured.  With respect to administrative proceedings, the term means the time written notice is received by the Insured.

## VII. CLAIMS

1.  **Notice of Claim.** Each Insured shall use all reasonable means to assure that each Claim is promptly reported to the Company AND IN NO EVENT LATER THAN SIXTY (60) DAYS FROM THE DATE OF THE INSTITUTION OF ANY LEGAL OR ADMINISTRATIVE PROCEEDING.  REPORTING THE CLAIM WITHIN THE SIXTY (60) DAYS FROM THE INSTITUTION OF ANY LEGAL OR ADMINISTRATIVE PROCEEDING IS A CONDITION PRECEDENT TO COVERAGE UNDER THIS POLICY.

Plaintiff argues that the claim was timely and defendant's denial of it was improper.

Essentially, plaintiff argues that the notice period under the policy (i.e., the triggering event for

the 60-day reporting deadline) is the receipt of notice by plaintiff of the "complaint" issued by

the OCRC.  The "complaint" is the beginning of the adjudicatory stage of the three-phase OCRC

"chronological administrative regimen" which is different from the "charge" which only begins

the investigatory stage of that regimen. Plaintiff had not received a "complaint" at the time it

submitted notice of the claim on December 3. Rather, defendant improperly used the "charge" as

9

the triggering event. Plaintiff reasons as follows.

As stated in Section VII, paragraph 1, above (Notice of Claim), the reporting deadline trigger under the policy is the "institution of any legal or administrative proceeding." Defendant's use of "Institution of the Claim" in its denial letter was improper as it applied a phrase appearing nowhere in the policy as the reporting deadline trigger. Rather, there had been no "proceeding" from which the 60 days was to have run. Instead, at the time plaintiff reported the claim, the OCRC charge was still in the investigatory stage of a three-stage chronological administrative regimen set forth in the Ohio Revised Code § 4112.05. Under that statute, the administrative regimen consists of the investigatory, conciliatory, and adjudicatory stages. It is only at the third - adjudicatory - stage when the issuance of a "complaint" by the OCRC is made that there is an "institution of any legal or administrative proceeding." Here, the matter never proceeded beyond the investigatory stage as an investigatory subpoena had only been issued and the OCRC had estimated that the investigation was projected to be completed in June 2014. Thus, the matter was still in the investigatory stage when plaintiff gave notice of the claim.

Thus, plaintiff argues, in denying the claim, defendant actually advanced the reporting deadline's 60-day trigger from plaintiff's receipt of notice of the third adjudicatory stage initiated by the service of the OCRC "complaint" to plaintiff's receipt of notice of the first investigatory stage initiated by the service of a "charge." Institution is defined in the policy as notice. Thus, the trigger is notice of the adjudicatory, or third stage, because "proceeding," as discussed below, means an adjudicatory and not an investigatory process.

Because the policy does not define proceeding, plaintiff argues that the Court should apply the usual definition of the term. Relying on *In re M.W.,* 133 Ohio St.3d 309 (2012),

10

plaintiff notes that the Ohio Supreme Court, in interpreting a statute which did not define

proceeding, stated that "proceedings evokes a court of law, not the investigatory action taken by

police prior to the filing of a complaint or a juvenile's initial appearance before a tribunal." As

such, plaintiff concludes that the Ohio Supreme Court recognized that the usual meaning of

"proceeding" is the adjudicatory stage in the legal or administrative context, and not the

investigatory stage. Thus, because at the time plaintiff reported the Fasanaro charge to defendant

the OCRC had not issued a complaint, it was not in the adjudicatory stage and, therefore, there

was no proceeding. Given that an investigation is not a proceeding, the reporting deadline had

not been triggered.

Defendant asserts that plaintiff's reasoning only presents a convoluted theory to justify its

untimely notice of claim. Rather, the OCRC proceeding began with the filing of the Fasanaro

charge and, therefore, defendant properly denied coverage on the basis that plaintiff failed to

timely notify defendant of the claim. For the following reasons, the Court agrees with defendant

that it was not improper to deny the claim as untimely.

Plaintiff's argument is based on the assertion that "proceeding" does not include pre-

complaint activities before an administrative agency.  But, plaintiff supports its definition of the

word "proceeding" by looking to the meaning of the word in a legal or judicial context, and not

within the context of an administrative matter.  On this basis, plaintiff's reliance on *In re M.W.* is

misplaced.[4] In that case, the issue was whether the statutory right to counsel for juveniles "at all

---

4    Plaintiff relies primarily on *In re M.W.*  In later briefing, plaintiff asserts that this
     Court's decision in *Thornton v. State Farm Auto Insurance Co., Inc.,* 1:06 CV 18
     (Nov. 17, 2006), involved "an analogous situation."  Plaintiff cites the case in
     support of  the proposition that an investigation is not part of a proceeding
     because a proceeding cannot occur unless and until a remedy is available or

stages of the proceedings" under Chapters 2151 and 2152 (governing juvenile courts) attached to

an interrogation of the juvenile by police prior to the filing of a complaint alleging delinquency

or prior to an appearance by the juvenile in juvenile court. The juvenile attempted to exclude his

written statement taken by police "prior to invocation of the juvenile court's jurisdiction." The

juvenile argued that the interrogation was a proceeding under the statute thereby entitling him to

counsel. Since the term "proceedings" was not defined in the statute, the court looked to its usual

definition.  The court concluded that "proceedings" only meant court proceedings and not the

pre-complaint interrogation which occurs before a juvenile court has jurisdiction over the matter.

This makes sense because a juvenile court would not have jurisdiction to appoint counsel where

the delinquency matter had not yet been brought in juvenile court.

   In examining definitions of the word "proceeding," the court looked at definitions that

applied to judicial matters.  The court quoted the four definitions of proceeding set forth in

Black's Law Dictionary (9th Ed.2009).  In so doing, it emphasized the meaning of the term

within a lawsuit:

> (1) the regular and orderly progression of a lawsuit, *including all acts and events between the time of commencement and the entry of judgment*" (emphasis added), (2) a way by which redress is sought from a tribunal or an agency, (3) an act or step that is part of a

---

  sought.  Redress, plaintiff asserts, is only available in the adjudicatory stage.
  *Thornton* is inapposite.  That case involved O.R.C. § 1345.10(C), the statute of
  limitations for bringing a claim under the Ohio Consumer Sales Protection Act
  (OCSPA). It did not address the meaning of "administrative proceeding" or
  "proceeding" in an administrative context and does not alter the Court's
  conclusion herein.  Moreover, even if "redress" could be considered a prerequisite
  for a "proceeding," redress is available upon the notice of the filing of an OCRC
  charge. Black's Law Dictionary defines redress as "relief; remedy" or "A means
  of seeking relief or remedy."  (10th ed. 2014)  Mediation and informal methods of
  conciliation could conceivably provide relief.

larger action, and (4) the business conducted by a court or other official body; a hearing.

*In re M.W.,* 133 Ohio St.3d at 313 (internal quotations omitted).  The court then recognized,

> It is also noteworthy that in 1969, when the General Assembly enacted R.C.2151.352, 'proceeding' was defined in Black's Law Dictionary in virtually the same way, but the entry included a comment that the term proceeding 'is properly applicable, in a legal sense, only to judicial acts before some judicial tribunal.' Id. at 1368 (4th Ed.1968). Also, Webster's Third New International Dictionary 1807 (1986) defines "proceedings" as "the course of *procedure in a judicial action or in a suit in litigation: legal action * * ** : a particular action at law or case in litigation." (Emphasis added.) Thus, the term "proceedings" denotes acts or events taken between the time of commencing an action at law until the entry of a final judgment by a judicial tribunal. "Proceedings" evokes a court of law, not the investigatory action taken by police prior to the filing of a complaint or a juvenile's initial appearance before a tribunal.

*Id.* at 314. [5]

Thus, the court was looking to the meaning of the term "proceeding" within a legal or judicial matter and concluded that it did not include the investigatory action occurring prior to the commencement of the judicial matter.  On the basis of this case, plaintiff asserts that an investigation is not a proceeding or an administrative proceeding. Plaintiff's interpretation of the case, which would always exclude investigatory action from the meaning of proceeding, would contradict the usual meaning of the word "proceeding" in an administrative context as defined in Black's Law Dictionary.  Further, an "administrative proceeding" is defined as "A hearing, inquiry, investigation, or trial before an administrative agency, usu. adjudicatory in nature but sometimes quasi-legislative." (10th ed. 2014) Contrary to plaintiff's position, inclusion of the language "usu. adjudicatory in nature" does not alter the conclusion that an administrative proceeding includes, at a minimum, "a hearing, inquiry, or investigation." This would include

---

[5]  In examining what actions comprised a legal proceeding, the court also looked to prior decisions and did not consider the meaning of the word "proceeding" in the context of an administrative matter which is at issue here.

13

pre-complaint activities before the administrative agency.

Plaintiff addresses the meaning of the word "proceeding" in regard to an administrative matter when it discusses the statutory construction of O.R.C. § 4112.05.  Plaintiff argues that the statute shows sequential phases in the OCRC administrative housing discrimination regimen and that the initial investigation and conciliation phases are not proceedings. Plaintiff asserts that it is only with the filing of a formal complaint by the OCRC, in the third (adjudicatory) stage, that the "proceeding" stage begins. However, the statutory provisions of § 4112.05 do not indicate that the activities undertaken before the filing of a formal OCRC complaint do not constitute proceedings. Rather, the statute shows that an OCRC proceeding begins with the filing of a charge.  The OCRC then gives the parties notice of the charge and, as occurred here, the option of mediating before an investigation.[6]  If mediation fails (or the parties opt to forego it), the OCRC begins an investigation. If the investigation reveals no probable cause, a formal complaint is not issued. If probable cause is found, the OCRC "shall endeavor to eliminate the practice by informal methods of conference, conciliation, and persuasion."   § 4112.05(B)(4). If those "informal methods" fail, the OCRC shall issue a complaint. § 4112.05(B)(5).

Therefore, the OCRC attempts informal methods at least twice after the charge is filed and before the filing of the formal complaint.  Clearly, the filing of a formal complaint is the last resort of the statute. To say that none of the activities occurring before that point constitute

---

[6]     As discussed above, the OCRC's official notification to plaintiff of the charge explains the two options for processing the charge (Option A- ADR and Option B- Investigation).  As to ADR, the notice explains what the mediation program is and states, "There will be no record of the proceeding and any notes taken by the mediator will be destroyed."  Also, the notice refers to the "mediation process" five times. Therefore, it appears that the OCRC considered the mediation to be a "proceeding."

14

"proceedings" would be nonsensical.  Also, it would render meaningless the definition of "administrative proceeding" which includes matters other than a formal trial.

Additionally, to accept plaintiff's interpretation that the notice period would only be triggered by the filing of a formal complaint (and very likely considering all the steps taken in the statute prior to that point) would mean that it may never be triggered.  Also, it would appear that plaintiff is acknowledging it would not be entitled to a defense until a formal complaint is filed by the OCRC because it would not be giving notice of the claim until that point. There would be no coverage when the charge was filed, mediated, and investigated.  In fact, plaintiff acknowledged in its December 3, 2013 "formal submission of a claim" that it was entitled to a defense during the investigation of the charge: "Please advise me immediately who will be representing the respondents in this matter and what steps are being taken to quash or limit the subpoena."  Also, plaintiff states in its motion that it is entitled to attorney's fees in defending itself against the charge.

Chapter 4112 does not define the term proceeding. In discussing the administrative prerequisites of Title VII (i.e., the 300 day limitations period for filing a charge with the EEOC), the Sixth Circuit concluded that plaintiff had initiated proceedings with the OCRC when she presented her claim to the OCRC intake officer and, therefore, satisfied the requirements of the limitations period. *Nichols v. Muskingum College,* 318 F.3d 674 (6th Cir. 2003).  In *O'Neill v. Coughlan*, 511 F.3d 638, 643 (6th Cir. 2008), a disciplinary grievance was filed against a judicial candidate.  Following the procedure set forth in the applicable rules, the candidate was given notice of the grievance and informed that the Disciplinary Counsel would investigate the matter and that he had a certain amount of time to provide a written response. Prior to responding to the

grievance, the candidate sued the Disciplinary Counsel in federal court alleging that the canons

he purportedly violated were unconstitutional.  The Sixth Circuit considered whether the district

court should have abstained, under the *Younger* abstention doctrine, from granting relief to

plaintiff. In so doing, the court had to decide whether there was "an on-going state judicial

proceeding."  Plaintiff argued that there was none because the filing of the grievance was a

predicate to, but did not start, a state judicial proceeding.  The court disagreed finding that "the

filing of a grievance is the beginning of the judicial process."  *Id.* at 643 The court cited *Hecht v.*

*Levin,* 66 Ohio St.3d 458 (1993), wherein the court held that the filing of a disciplinary

grievance, although subject to investigation and independent review prior to the filing of a

formal complaint, is part of a judicial proceeding. By analogy, this Court finds that a proceeding

begins with the filing of an OCRC charge.

　　　Plaintiff faults defendant for equating "claim" with "proceeding" given that the policy's

definition of claim includes a mere "written demand for money" which is neither a legal or

administrative proceeding.  The Court agrees with defendant that the policy shows the parties'

intent to have a "proceeding" encompass the submission of the OCRC charge, its mediation, and

investigation.  The notice provision falls under the section entitled "Claims" and the provision is

entitled "Notice of Claim." A "claim" is defined to include "the Institution of a charge against

the Insured with any Authority by a Tenant or an administrative action initiated by an Authority

including any investigations, conciliation meetings or hearings on behalf of a Tenant." The term

"Authority" "means... any similar federal, state or local agency charged with the administration

of fair housing laws."  Clearly, this includes the OCRC. On this basis, the Court must conclude

that the submission of the Fasanaro charge to the OCRC and its mediation and investigation

16

constitute a proceeding.

For the foregoing reasons, the Court finds that defendant properly denied coverage.

**II. Count Two (Bad Faith)**

Under Ohio law, "an insurer has the duty to act in good faith in the handling and payment of the claims of its insured." *Hoskins v. Aetna Life Ins.Co*., 452 N.E.2d 1315, syllabus ¶ 1 (Ohio 1983). "An insurer fails to exercise good faith in the processing of a claim of its insured where its refusal to pay the claim is not predicated upon circumstances that furnish reasonable justification therefor." *Zoppo v. Homestead Ins. Co.*, 644 N.E.2d 397, syllabus ¶ 1 (Ohio 1994).

Plaintiff asserts that defendant's rejection of the Fasanaro claim as untimely was unreasonable because defendant used "time-shortening non-existent language over an actual Policy provision." (Doc. 17 at 12) Based on the foregoing discussion, the bad faith claim fails because defendant properly denied coverage.

Plaintiff also contends that defendant has "previously" engaged in bad faith toward plaintiff. In particular, plaintiff asserts that, on a prior occasion, defendant purported to fulfil its duty to defend plaintiff by providing plaintiff with a lawyer who was not licensed to practice law in Ohio and, therefore, could not represent plaintiff against the OCRC. (Doc. 17 Exs. L, M) However, because this Court looks to whether defendant unreasonably denied coverage *in this case*, plaintiff cannot establish bad faith on the basis of an unrelated case.

Plaintiff also points out that in the subsequent policy issued by defendant the following language was now included: "Claim means the Insured's receipt of... A written notice of an administrative proceeding action initiated by an Authority or Tenant as a result of Wrongful Discrimination by the Insured including any investigations, conciliation meetings or hearings."

17

The Lyons Insurance Agency gave plaintiff a copy of the renewal policy on January 13, 2014 and the policy was "effective 11/18/13-14." (Doc. Doc. 38 App. 31, 42) Plaintiff had submitted this subsequent policy as part of an appendix to its Rule 56(d) motion seeking to defer ruling on defendant's Motion for Summary Judgment until more discovery was taken. As such, it does not appear to be proper evidence submitted in support of the briefs herein.  Moreover, the Court has not found the language of the policy to be ambiguous and, therefore, this extrinsic evidence cannot be considered.  "The reviewing court may ... examine extrinsic evidence to determine the intent of the parties if a contract is ambiguous." *Crow v. Dooley,* 2012 WL 2090078 (Ohio App. 3rd Dist. June 11, 2012) (citations omitted).

Plaintiff asserts that it is entitled to both the attorney's fees incurred herein to vindicate its right to coverage and those incurred in defending the Fasanaro charge.  On the basis that this Court has determined that defendant properly denied coverage and there was no bad faith, plaintiff is not entitled to attorney's fees. Finally, plaintiff submits an email which purports to show that in the defense of plaintiff in another matter pending before the OCRC, counsel retained by defendant was authorized to intervene in the litigation plaintiff brought against the OCRC. (Doc. 17 Ex. N) Plaintiff asserts that defendant is liable for the attorney's fees which plaintiff incurred in that other litigation brought against the OCRC.  However, plaintiff's lawsuit against the OCRC was not a defense of the Fasanaro charge but an offensive maneuver unnecessary to the defense of that charge.  Plaintiff would not be entitled to fees for that case.

### Conclusion

For all the foregoing reasons, plaintiff's Motion for Partial Summary Judgment is denied and  defendant's Motion for Summary Judgment is granted.

IT IS SO ORDERED.


 /s/ Patricia A. Gaughan
PATRICIA A. GAUGHAN
United States District Judge

Dated: 6/24/16